**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **SHELIA STAPLES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:13-cv-01031** |
| ) | **Judge Trauger/Frensley** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 20. Plaintiff has filed an accompanying Memorandum in Support of her Motion. Docket No. 21. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 22.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Supplemental Security Income ("SSI") on June 10, 2010, with a protective filing date of April 18, 2010, alleging that she had been disabled since

January 10, 1990, due to back and neck problems, colon problems, seizure disorder, high blood pressure, and mental problems.[1] *See, e.g.,* Docket No. 12, Attachment ("TR"), p. 67, 77, 142. Plaintiff's application was denied both initially (TR 66-67) and upon reconsideration (TR 68). Plaintiff subsequently requested (TR 86-88) and received (TR 30-65) a hearing. Plaintiff's hearing was conducted on April 13, 2012, by Administrative Law Judge ("ALJ") Brian Dougherty. TR 30. Plaintiff and Vocational Expert, Michelle McBroom-Weiss, appeared and testified. *Id.*

On May 21, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 10-29. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since April 18, 2010, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: lumbago; degenerative disc disease of the lumbar spine; insomnia; joint pain of the leg; hypertension; seizure disorder; headaches; reflux; cognitive disorder; major depressive disorder; bipolar; anxiety; adjustment disorder with anxiety; and depressed mood (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20

---

[1] Plaintiff also previously filed an application for SSI on January 26, 2006, which was denied. TR 66.

CFR 416.967(b) except the claimant must avoid exposure to hazards. The claimant is further able to understand, remember and carry out simple instructions and is able to adapt to gradual and infrequent changes in the workplace.

5. The claimant is capable of performing past relevant work as a gluer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since April 18, 2010, the date the application was filed (20 CFR 416.920(f)).

TR 15-24.

On May 30, 2012, Plaintiff timely filed a request for review of the hearing decision. TR 8. On July 24, 2013, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369

(6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.,* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and

nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) improperly rejecting the medical opinions of Plaintiff's treating nurse practitioner, Ms. Vicki L. Mitchell, and consultative examiner, Dr. Terry Edwards; (2) improperly assessing Plaintiff's credibility, by not basing his decision on substantial evidence, by using boilerplate language in violation of 96-7p, by citing Plaintiff's drug-seeking behavior and travel with her boyfriend, and by failing to consider whether Plaintiff's failure to obtain mental health treatment was due to her inability to afford care; (3) failing to incorporate all of Plaintiff's impairments in his Residual Functional Capacity determination; (4) relying on VE testimony that was based on inadequate hypothetical questions that did not contain all of Plaintiff's limitations, and failing to ask the VE whether her testimony was consistent with the DOT; (5) improperly determining that Plaintiff could perform past relevant work, as Plaintiff's past work as a gluer was not substantial gainful activity, as well as finding that Plaintiff can perform other work.  Docket No. 21.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

### 1. Weight Accorded to the Medical Opinion Evidence

Plaintiff argues that the ALJ improperly rejected the medical opinions of her treating nurse practitioner, Vicki L. Mitchell, F.N.P, and consultative examiner, Terry Edwards, Ed.D. Docket No. 21, p. 48-52. With regard to Ms. Mitchell, Plaintiff contends that the ALJ's rejection of her opinion is in violation of applicable regulations and rulings and is not supported by the record. *Id.* at 48. While acknowledging that Ms. Mitchell is not an acceptable medical source, Plaintiff argues that she is an "other source," as defined by SSR 06-3p, which instructs that such opinions are important and must be considered. *Id.*, *citing* SSR 06-3p. Plaintiff further argues that an evaluation of Ms. Mitchell's opinion, using the factors provided by SSR 06-3p that are to be considered when evaluating assessments from both acceptable and other sources, would result in Ms. Mitchell's opinion being given great weight. *Id.* at 48-49. Plaintiff maintains that Ms. Mitchell's opinion is also consistent with Plaintiff's treatment records, and "is in fact the only physical assessment in the file, save those of the two DDS non-examining consultants . . . ." *Id.* at 49. In addition, Plaintiff contends that the ALJ's reasons for rejecting Ms. Mitchell's opinion were improper – namely, that the ALJ cherry-picked Ms. Mitchell's notes without providing

necessary context, put on "his doctor's hat" to offer a medical opinion, and attempted to discredit Ms. Mitchell by claiming that she over-exaggerated Plaintiff's limitations in her opinion "'in a good-intentioned effort to assist [Plaintiff] with obtaining disability benefits.'" *Id.* at 50-51, *citing* TR 21.

Defendant responds that under the Regulations, Ms. Mitchell is not an acceptable medical source and as such, she is prohibited from providing medical opinions, and can only provide "an opinion regarding her <u>observations</u> about plaintiff's functional limitations as a result of an impairment diagnosed by an acceptable medical source." Docket No. 22, p. 19-20, *citing* 20 CFR § 416.913(a), 20 CFR § 416.913(d), 20 CFR § 416.927(a)(2) (emphasis in original). Defendant argues that the ALJ properly accorded Ms. Mitchell's opinion only little weight because it was based primarily on Plaintiff's own representations regarding Plaintiff's symptoms, which the ALJ found to be not fully credible, and because it is not supported by Plaintiff's treatment records, including Ms. Mitchell's own records. *Id.* at 20.

With regard to Dr. Edwards, Plaintiff argues that although the ALJ claimed that he was according considerable weight to Dr. Edwards's opinion, he did not incorporate that opinion into Plaintiff's RFC, leading to an erroneous finding that Plaintiff is not disabled. Docket No. 21, p. 51-52. Specifically, Plaintiff contends that "the VE testified that the limitations noted by Dr. Edwards (specifically the 'moderate to marked' impairment in focus and concentration) would preclude performance of Ms. Staples' past work as well as all of the other jobs the VE had identified." *Id.* at 51. Plaintiff further contends that the ALJ's explanation for how he resolved the contrast between Dr. Edwards's opinion and the RFC ultimately determined for Plaintiff is insufficient: "As one can see, the ALJ's solution is to 'interpret' the impairment in focus and

9

concentration out of existence, a fancy trick if ever there was one!" *Id.* at 52, *citing* TR 22.

Defendant responds that, despite according considerable weight to Dr. Edwards's opinion, "the ALJ was not constrained to give it controlling weight and to incorporate those parts of Dr. Edward's [*sic*] opinion the ALJ disagreed with." Docket No. 22, p. 16. Additionally, Defendant contends that the ALJ was not required to adopt Dr. Edwards's opinion regarding Plaintiff's inability to travel independently due to seizures. *Id.* at 17.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs

and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added).  *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

The medical record contains treatment notes from Ms. Mitchell, F.N.P., of Self-Centered Primary Care and Weight Loss.  TR 620-28, 714-29.

The Regulations provide that the ALJ may properly:

[U]se evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.  Other

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

sources include, but are not limited to -

(1) Medical Sources not listed in paragraph (a) of this section (for example, *nurse-practitioners*, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

20 CFR § 404.1513(d) (emphasis added).

The ALJ discussed Ms. Mitchell's opinion evidence as follows:

The claimant's primary care provider is nurse practitioner Vicki L. Mitchell, who began treating the claimant in October 2011. Ms. Mitchell has treated the claimant for back pain, hip pain, hypertension, and depression. In April 2012, Ms. Mitchell completed another [*sic*] source statement in which she opined the claimant is able to sit for one hour, stand/walk for 15-20 minutes, and must lie down and elevate her legs four hours in an eight-hour work day. Ms. Mitchell opined the claimant could lift five pounds up to one hour a day, and more than five pounds less than one hour a day. Ms. Mitchell opined the claimant could never stoop, kneel or crouch, and would miss more than four days a month due to her impairments. Ms. Mitchell stated the claimant suffered from severe depression, anxiety, back pain with radiation, degenerative disk disease, uncontrolled hypertension, seizure disorder, and insomnia. (Exhibit 27F) From a mental standpoint, Ms. Mitchell opined that the claimant is not capable of remembering work like procedures; maintaining attention for two hours; maintaining regular attendance; sustaining an ordinary routine without special supervision; working in close proximity to others without unduly distraction [*sic*]; complete a normal workday without interruption from psychologically based symptoms; perform at a consistent pace; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers, respond to change; be aware of hazards; understand; remember and carry out detailed instructions; interact with the public; set realistic goals; maintain socially appropriate behavior; travel to unfamiliar places; and use public transportation due to her anxiety and depression.

Despite these disabling impairments, there is no record that Ms. Mitchell has referred the claimant to a specialist to evaluate her orthopedic difficulties. In addition, despite Ms. Mitchell's recommendations, the claimant has not pursued formal therapy for her depression and anxiety. Although Ms. Mitchell states the

claimant's hypertension is uncontrolled, Dr. Sukulovski noted the claimant's blood pressure to be 125/85 in January 2011. (Exhibit 21F)

Ms. Bryant's opinion is inconsistent with the objective medical evidence, including the treatment notes, which indicate that the claimant's depression, hip pain and low back pain only moderately limit her activities; that medication is relieving most of her pain; and that the severity of her pain is moderate 3/10 after medication.[4] 26F, pgs 1, 3. Further, the course of treatment pursued by the nurse practitioner has not been consistent with what one would expect if the claimant were truly limited to the very significant extent that the nurse practitioner has listed in the other source statement.

It is not uncommon for a treating medical professional to complete medical source statement forms that over-exaggerate a claimant's limitations in a good-intentioned effort to assist the claimant with obtaining disability benefits. Unfortunately, when the treatment records do not support the extremely severe degree of those limitations as listed on the completed form, it is difficult to give much weight to the opinion. This appears to be the case with Ms. Mitchell's other source statements. In addition, there is the issue with the claimant's underlying credibility with regard to her representation of her symptoms. She has documented drug-seeking behavior. In addition, she has not followed Ms. Mitchell's recommendation to seek mental health therapy. These facts detract from her overall credibility. Ms. Mitchell's opinions with regard to the claimant's physical and mental limitations are based primarily on the claimant's representations concerning her symptoms. As a result of the underlying credibility issues with regard to such representations, Ms. Mitchell's opinion is given little weight.

. . .

Pursuant to Social Security Ruling 96-6p and 20 C.F.R. §§ 404.1527(f) and 416.927(f), the undersigned has considered the findings of fact made by state agency medical consultants and other program physicians regarding the nature and severity of the

---

[4]Although the ALJ refers to "Ms. Bryant," it appears from the context that he means to refer to Ms. Mitchell, Plaintiff's nurse practitioner. As far as the undersigned can determine, there is no "Ms. Bryant" associated with this matter.

claimant's physical impairment. Little weight is accorded to the claimant's primary care provider Ms. Vicki Mitchell, as the severe limitations opined by Ms. Mitchell in her medical source statement dated April 12, 2012 are inconsistent with the other medical evidence of record and Ms. Mitchell's treatment plan and treatment notes. In addition, the opinion is given less weight inasmuch as the it [*sic*] is based primarily on the claimant's non-credible representations concerning her symptoms, and the other evidence of record supports the finding that the claimant operates at much higher functional level than opined by Ms. Mitchell. (Exhibit 27F) Significant weight is accorded to the observations and diagnoses of examining physician Dr. Bill Sekulovski and consultative examiner Dr. Bruce Davis as these opinions are consistent with each other, the objective medical evidence and the claimant's lack of treatment. (Exhibit 14F and Exhibit 21F) The above stated opinions of Dr. Dr. [*sic*] Terry Edwards have been given considerable weight and incorporated into the residual functional capacity, along with the mental health treatment notes of the claimant's treating psychiatrist Dr. Narciso Gaboy. (Exhibit 13F and Exhibit 20F)

TR 20-22, *citing* TR 462-66, 467-68, 494-591, 592-97, 714-22, 723-29.

Although Plaintiff asserts that the ALJ did not comply with the requirements listed in SSR 06-3p, it is clear from the above discussion that the ALJ fully evaluated Ms. Mitchell's opinion, considered it with regard to the record as a whole, and clearly articulated his reasoning for giving the opinion little weight. Rather than "cherry-picking" Ms. Mitchell's notes, as can be seen above, the ALJ thoroughly discussed her notes, showing that he evaluated the entire record and considered its contents in making his decision. The ALJ noted that Ms. Mitchell's opinion was inconsistent with the objective evidence, including her own treatment notes. TR 22. In addition, as will be discussed in greater detail below, the ALJ properly did not accord full credibility to Plaintiff's subjective representations. As noted above, the supportability of an opinion with relevant evidence is material when determining the weight given to such an

opinion.  *See* 20 CFR § 416.927(d).  Accordingly, the ALJ properly reasoned that Ms. Mitchell's opinion should be given less weight, because of her reliance on Plaintiff's subjective representations in her opinion, as well as the conflict between that opinion and the objective evidence.

Furthermore, the ALJ correctly noted that as a nurse practitioner, Ms. Mitchell's opinion cannot be considered an acceptable medical opinion as defined in 20 CFR § 404.1513(a).  As the Regulations note, the opinion from an "other source" can only "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function;" it cannot establish Plaintiff's impairments and limitations on its own.  *See* SSR 06-03p.  Thus, because the ALJ determined and articulated that Ms. Mitchell's opinion was inconsistent with the weight of evidence indicating that Plaintiff's impairments were not as disabling as Ms. Mitchell opined, the ALJ correctly abided by the mandates of SSR 06-03p.  Finally, the ALJ did not improperly render a medical opinion, nor did he improperly discredit Ms. Mitchell's opinion, as Plaintiff contends; as discussed above, the ALJ's determination regarding Ms. Mitchell's opinion was well-reasoned and considered all relevant evidence of record.  Accordingly, Plaintiff's argument fails.

Turning to the opinion of Dr. Edwards, the ALJ discussed that opinion as follows:

> Dr. Terry Edwards, a consultative examiner, evaluated the claimant
> in August 2010, and conducted a mental status exam.  Dr. Edwards
> noted the claimant reported seizure problems, and opined that her
> memory and concentration problems were likely related to her
> seizures and other medical issues.  The claimant told Dr. Edwards
> that she does not date, and she is not interested in dating.  Dr.
> Edwards opined that the claimant would be able to make
> interpersonal decisions, and would be able to get along with bosses
> and coworkers, but would have moderate to marked problems with

stress only.  He opined that she could not travel independently and
would have moderate to marked impairment in focus and
concentration, and moderate problems with overall adaptive skills.
Cognitively, she would be able to learn simple instructions with
extra assistance and have moderate problems with social
functioning.  Dr. Edwards diagnosed the claimant with a cognitive
disorder, and major depressive disorder.  (Exhibit 13F)

. . .

The above-stated opinions of Dr. Dr. [*sic*] Terry Edwards have
been given considerable weight and incorporated into the residual
functional capacity, along with the mental health treatment notes of
the claimant's treating psychiatrist Dr. Narciso Gaboy.

TR 19-20, 22 *citing* TR 462-66, 494-591.

As an initial matter, the opinion of a consulting physician is not entitled to the deference

due the opinion of a treating physician.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Further, the fact that an ALJ accords weight to an opinion does not require the ALJ to adopt that

opinion wholesale.  *See, e.g.*, *Taylor v. Colvin*, No. 1:13-cv-222, 2013 WL 6162527 at *14 (N.D.

Ohio Nove. 22, 2013).  Accordingly, simply because the ALJ gave weight to Dr. Edwards's

opinion and incorporated it into his RFC finding does not mean that Dr. Edwards's findings as to

Plaintiff's moderate to marked limitations in focus and concentration were, or should have been,

included.  Dr. Edwards's opinion with regard to Plaintiff's ability to focus and concentrate was

inconsistent with the opinions of Dr. Bruce Davis and Dr. Bill Sekulovski, whose opinions the

ALJ accorded "significant weight."  The ALJ discussed the opinions of Drs. Davis and

Sekulovski as follows:

Dr. Bruce Davis, a consultative examiner, evaluated the claimant in
August 2010.  Dr. Davis evaluated the claimant's back pain.
Physical examination revealed neck pain with no tenderness or
spasms, with slow but normal neck flexion, extension, lateral

flexion, and rotation; normal shoulder, elbow, wrist, and hand motion with good grip. The claimant's lower back pain revealed no tenderness or spasms, with slow position change, thoracolumbar flexion with 90 degrees, extension 20 degrees, lateral motion 25 degrees, hip flexion 100 degrees, abduction 40 degrees, straight leg raising 90 degree [*sic*] supine and seating; incomplete squatting; no atrophy, normal reflexes, normal gait with slow gait maneuvers (heel, toe and tandem) across exam room without assistance. (Exhibit 14F)

Dr. Bill Sekulovski, evaluated the claimant in January 2011. Dr. Sekulovski noted the claimant was not taking any medicate [*sic*] at the time for her seizures and that her seizures were under fair control despite no medication. A mini-mental status examination revealed the claimant to be alert and oriented x 3; with immediate recall of 3 out of 3; short term recall 3 out of 3; with the ability to repeat, name, and follow complex commands. The claimant was noted to have responded normally to assessment of judgment, insight, recent and remote memory, with no anxiety, agitation, or depressed affect. The only problem Dr. Sekulovski definitely diagnosed the claimant with was benign hypertension. (Exhibit 21F)

TR 20, *citing* TR 467-68, 592-97.

As can be seen, Dr. Sekulovski determined Plaintiff to have no impairments in focus and concentration; in fact, the only problem he diagnosed Plaintiff with was benign hypertension. TR 20, *citing* TR 592-97. In addition, as noted above, the ALJ determined the opinions of Drs. Davis and Bruce to be consistent with each other, which was one of his reasons for according them significant weight. TR 22. Thus, the record presented inconsistent opinions regarding Plaintiff's ability to focus and concentrate, and the ALJ resolved this inconsistency by adopting the opinions of Drs. Davis and Sekulovski, with regard to this issue, in his RFC finding. The Code of Federal Regulations states that when opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner.

20 CFR § 416.927(e)(2). The ALJ properly incorporated Dr. Edwards's opinion in his RFC finding, while coming to a reasoned decision to not accept Dr. Edwards's opinion wholesale. Accordingly, Plaintiff's argument fails.

Regarding Plaintiff's argument that the ALJ "'interpret[ed]' the impairment in focus and concentration out of existence" to resolve the dissonance between Dr. Edwards's opinion and the ALJ's ultimate RFC finding, the footnote referenced by Plaintiff states the following:

> The consultative examiner's opinions (Exhibit 13F) of the claimant having between a "moderate to marked" problem with stress only and between a "moderate to marked" impairment in focus and concentration are interpreted at Step 3 of the sequential evaluation as "less than a marked" impairment. Therefore, an impairment that is between a "moderate" impairment and a "marked" impairment does not establish a "marked" impairment. At Step 5 of the sequential evaluation, this opinion of between "moderate and marked" limitations is interpreted as the claimant being able to perform only simple, unskilled tasks and instructions. This very restricted functional level takes into account the claimant's limitations with stress and with focus and concentration.

TR 22, *citing* TR 462-66.[5] As can be seen, the ALJ appropriately interpreted an impairment between "moderate and marked." By definition, an impairment between "moderate and marked" cannot establish a "marked" impairment. Nevertheless, the ALJ's interpretation still maintains a severely restricted functional level. Therefore, Plaintiff's contention that the ALJ used a "fancy trick" to "'interpret' the impairment in focus and concentration out of existence" is without merit.

---

[5]Although Plaintiff cites to "footnote 3 on page 10" of the ALJ's decision (Docket No. 21, p. 52), this appears to be a typographical error. The text quoted by Plaintiff is found in footnote 1. *See* TR 22.

## 2. Plaintiff's Credibility

Plaintiff contends that in finding that her subjective complaints were not fully credible, the ALJ's erred by making a finding that "is not supported by substantial evidence, violates SSR 96-7p and is precisely the kind of boilerplate, conclusory opinion that ALJs prohibited [*sic*] from making." Docket No. 21, p. 54. Plaintiff points to SSR 96-7p and a Seventh Circuit decision disapproving of "conclusory statements" regarding credibility. *Id.* at 54-55, *citing Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003). Plaintiff argues that the ALJ's reasons for finding her not to be fully credible "do not withstand scrutiny" and, therefore, the ALJ's credibility determination was improper. *Id.* at 55. Specifically, Plaintiff contends that the ALJ wrongly found that Plaintiff's travel with her boyfriend in 2008 and 2009 detracted from her claim of disability in and after April 2010. *Id.* at 40. Plaintiff also contends that, in citing Plaintiff's "drug-seeking behavior," the ALJ referred to ER visits that took place nearly seven years before Plaintiff filed her SSI claim, and ignored Plaintiff's twenty-three other visits to the hospital for treatment of various complaints. *Id.* at 41.

Plaintiff further argues that "the ALJ erred in rejecting [Plaintiff's] complaints of disabling symptoms because Plaintiff failed to obtain even more medical treatment (e.g. psychological therapy) without considering whether this failure resulted from an inability to afford treatment." *Id.* at 56. Plaintiff contends that the ALJ erroneously found Plaintiff's failure to obtain mental health treatment to be evidence that Plaintiff's affective disorder was not severe. *Id.*

Defendant responds that "in evaluating credibility, the ALJ has complied with SSR 96-7p and correctly found plaintiff not to be fully credible." Docket No. 22, p. 12. Specifically,

Defendant argues that the ALJ found that Plaintiff's activities of daily living are inconsistent with the alleged severity of her impairments and that Plaintiff has made inconsistent statements regarding her impairments. *Id.* at 9. Defendant further argues that Plaintiff's testimony regarding her travel with her boyfriend is inconsistent with Plaintiff's claims that her back hurt so much that she had to stay at home, and that Plaintiff was traveling with her boyfriend (and missing health appointments) even after April 2010. *Id.* at 10-11. Defendant points to the fact that "[o]n [Plaintiff's] last visit on December 20, 2010, to Dr. Gaboy, as mentioned, he noted that plaintiff was 'barely compliant' with her appointments as 'she usually goes with her partner' travelling." *Id.* at 11, *citing* TR 494. Defendant contends that the ALJ correctly found that Plaintiff's missed mental health appointments and failure to take prescribed medications and seek mental health treatment indicate that Plaintiff's mental health impairments are not as severe as she has alleged. *Id.* at 11. Defendant also contends that the ALJ correctly concluded that "plaintiff's 'drug seeking behavior' further detracts from her credibility regarding the severity of her alleged impairments." *Id.* at 12, *citing* TR 19. As to Plaintiff's argument that the ALJ should have considered whether Plaintiff did not seek mental health treatment because she could not afford to, Defendant counters that "Exhibit 1 of plaintiff's Brief outlines some 59 visits to Dr. Gaboy which plaintiff could afford to make." *Id.* at 11.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations, including pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability . . . . [T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined

> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986), *quoting* S.

Rep. No. 466, 98th Cong., 2d Sess. 24 (emphasis added); *see also* 20 CFR §§ 404.1529, 416.929

("statements about your pain or other symptoms will not alone establish that you are disabled . . .

."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("though Moon alleges fully

disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations . . . if

the subjective allegations, the ALJ's personal observations, and the objective medical evidence

contradict each other.").  Moreover, "[a]llegations of pain . . . do not constitute a disability,

unless the pain is of such a debilitating degree that it prevents an individual from participating in

substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224,

1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage, and effect of medication; and the other

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)*,*

*construing* 20 CFR § 404.1529(c)(2).  After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms

are not credible. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997);

*Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y*

*of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar ultimately found that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements regarding the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment.

TR 18. The ALJ explained his rationale for so finding as follows:

> The claimant's work history does not enhance the credibility of her allegations of disability. The claimant has never worked on more than a sporadic basis and has never demonstrated a consistent motivation to work before the date of which she alleges becoming disabled, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments. (Exhibit 5D) A poor work history can lessen a claimant's credibility. Woolf v. Shalala, 3 F.3d 1274 (8th Cir. 1993).

> The claimant's activities of daily living are inconsistent with her allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described above. The claimant can dress herself, prepare simple meals, and feed her dogs. She also stated that she reads occasionally, watches television and visits with her family. (Exhibit 5E and Exhibit 9E)

> The claimant's subjective complaints to her physicians, the objective findings documented in her medical records, and the treatment she has required do not support a finding that her severe impairments prevent her from performing all work. Although the claimant alleges disabling physical and mental problems, treatment notes from Dr. Narciso C. Gaboy, the claimant's treating physician, indicate the claimant alleges stressors such as taking care of her elderly parents and working in 2008 and 2007. Dr. Gaboy's treatment notes indicate that he is treating the claimant for medication maintenance management and brief supportive therapy, but consistently urges the claimant to see a therapist, to no avail. In August 2008, the claimant reported to Dr. Gaboy that she enjoys traveling with her boyfriend on his rig. In April 2009, Dr. Gaboy

noted the claimant missed her last appointment because she was traveling with her boyfriend. In October 2009, Dr. Gaboy noted the claimant had missed her last two appointments and was non-compliant. In December 2009, Dr. Gaboy noted that the claimant was barely completing her treatment goals because she was non-compliant with her appointments and her medication. The undersigned notes that in every treatment record with Dr. Gaboy in 2009, the claimant's Axis III states Good Health. (Exhibit 20F)

The medical record indicates the claimant did not return to Dr. Gaboy until December 2009. At that time, the claimant reported that she was traveling with her boyfriend and missed her last appointment. Dr. Gaboy noted that the claimant enjoyed relating her travels with her boyfriend, and noted in Axis III that the claimant was in Good Health. (Exhibit 20F) The medical record indicates the claimant did not continue treatment with Dr. Gaboy after December 2010. The claimant failed to follow Dr. Gaboy's treatment recommendations, specifically in her non-compliance with medication and missed appointments, along with her failure to find a therapist, despite Dr. Gaboy's repeated recommendations. Additionally, the claimant stopped treatment with Dr. Gaboy in December 2010.

The claimant's non-compliance, along with her discontinuation of treatment, indicate that her mental health problems may not be as severe as alleged. It is reasonable to conclude that the claimant's ability to function would improve if she sought consistent formal mental health treatment and followed her physician's plan of care more diligently. Nevertheless, the claimant's ability to travel cross-country with her boyfriend indicates a high level of function that is inconsistent with her complaints of disabling anxiety, seizures, and major depressive disorder. The claimant was able to enjoy these trips, and later relate her adventures to Dr. Gaboy in an enjoyable fashion; actions inconsistent with someone suffering disabling depression and anxiety, with disabling fear of having a seizure.

The claimant's treatment record contains medical advice from many years prior to the alleged onset date. Of note, the claimant had a primary care physician in 2005 and 2006 named Dr. Janina Meissner who treated the claimant for hypertension, headaches, GERD, bipolar disorder, and insomnia. (Exhibit 6F) In June 2006, Dr. Paulo C. Acosta, a neurologist, examined the claimant and

diagnosed her with seizure disorder. (Exhibit 7F) The record indicates the claimant did not return to Dr. Acosta after his initial examination, and there are no records that the claimant returned to Dr. Meissner after February 2006. From February 2006 until October 2011, the claimant's treatment notes are limited to Dr. Gaboy's psychiatric medical management and numerous emergency room visits. (Exhibit 11F and Exhibit 22F) Additionally, the claimant was seen at Nashville Digestive Disease Center from September 2007 until April 2008, and diagnosed with gastritis and esphagitis. (Exhibit 9F)

The claimant has a history of drug seeking behavior, and emergency room records reflect the claimant sought treatment from numerous hospitals on the same day with requests for narcotic medication. (Exhibit 1F, Exhibit 3F, Exhibit 8F, and Exhibit 12F) This behavior further detracts from the claimant's credibility with regard to her description of her symptoms in this case.

. . .

Despite the claimant's reports of frequent seizures, the claimant's medical record reflects that her seizure disorder was under control in October 2011. The claimant has been treated numerous times by her primary care provider since October 2011. The treatment notes do not document that the claimant reported any seizure activity.

. . .

The undersigned has evaluated the medical evidence along with the claimant's testimony, and finds that although the claimant suffers from numerous conditions that cause some limitations in her ability to perform work related activities, the evidence does not support that any of the claimant's impairments are untreatable, or that the claimant has made a consistent effort to treat her impairments in hopes of finding employment. The claimant has documented drug seeking behavior that along with her poor earning records, indicate the claimant has other motivations in life that do not include being gainfully employed. Additionally, the claimant's history of traveling across the country with her boyfriend is inconstant [*sic*] with the inability to sit for more than an hour at a time due to disabling pain, and inconstantly [*sic*] with disabling anxiety and depression.

While the claimant's medical records do not reveal that her severe impairments are disabling, these conditions do impose some limitations. The evidence of record supports a finding that claimant's severe impairments limit her to light work with some additional limitations. Specifically, the evidence reveals that claimant can lift and carry up to 20 pounds occasionally and must avoid all hazards. The claimant is further limited to jobs that only require simple instructions, and require [*sic*] initial extra help to learn the job, with only gradual and infrequent changes in the workplace. This finding is based on the opinion of the consultative examiners in exhibits 13F and 14F. This finding is supported by claimant's lumbago; degenerative disc disease of the lumbar spine; insomnia; joint pain of the leg; hypertension; seizure disorder; headaches; reflux; cognitive disorder; major depressive disorder; bipolar; anxiety; adjustment disorder with anxiety; and depressed mood.

TR 18-22, *citing* TR 149-52, 178-85, 201-08, 247-50, 259-82, 302-11, 312-15, 316-62, 363-77, 400-68, 494-597 (footnote omitted).

As can be seen, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. *Id.* The ALJ's articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818

F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds

contradictions among the medical reports, the claimant's testimony, the claimant's daily

activities, and other evidence. *See Walters*, 127 F.3d at 531, *citing Bradley,* 862 F.2d at 1227; *cf*

*King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human*

*Servs.*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not

credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony

(*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. S*ee King*, 742

F.2d at 975.

Although Plaintiff asserts that the ALJ used boilerplate language along with unsupported

reasoning, as can be seen above, the ALJ actually considered the record, properly evaluated its

merits, and came to a reasoned decision regarding Plaintiff's credibility. TR 18-22. With respect

to Plaintiff's contention that the ALJ did not consider her inability to afford treatment, as can also

be seen above, the ALJ explicitly discussed and referred to Exhibit 5D, Plaintiff's "Detailed

Earnings Query." TR 18. This document details Plaintiff's earnings from various employers.

TR 149-52. Accordingly, the ALJ was aware of Plaintiff's finances.

Regarding Plaintiff's assertion that the ALJ's decision is not based on substantial

evidence, as explained above, "substantial evidence" means "such relevant evidence as a

reasonable mind would accept as adequate to support the conclusion." *Her*, 203 F.3d at 389,

*citing Richardson*, 401 U.S. at 401, and has been further quantified as "more than a mere scintilla

of evidence, but less than a preponderance." *Bell*, 105 F.3d at 245, *citing Consol. Edison Co.*,

305 U.S. at 229.

The record here contains many doctors' evaluations, medical assessments, test results,

and the like, all of which were properly considered by the ALJ, and all of which constitute "substantial evidence." *See* TR 18-22. Additionally, the ALJ's decision demonstrates that he carefully considered the testimony of both Plaintiff and the VE. TR 18-24. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that Plaintiff's allegations that she is incapable of all work activity are not fully credible. *Id.*

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner,* 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key*, 109 F.3d at 273.

As discussed above, after assessing all of the medical and testimonial evidence, the ALJ ultimately determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment." TR 18. In making this determination, the ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

### 3. Residual Functional Capacity

Plaintiff maintains that "the ALJ's RFC finding is contradicted by his own Step 2 findings that [Plaintiff] suffers from 14 severe impairments." Docket No. 21, p. 55. Specifically, Plaintiff contends that the RFC "in no way" includes the limitations that result from these

impairments, especially concerning Plaintiff's insomnia, low back and hip pain, headaches, and medication use. *Id.* at 55-56.

Defendant responds that some of the fourteen severe impairments overlap. Docket No. 22, p. 15. Defendant further responds that "Step 2 is a threshold question with only a de minimis functional 'severity' requirement" and that "[m]edical conditions alone do not entitle one to disability benefits without related functional loss." *Id.*, *citing Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Defendant argues therefore that it is the ALJ's sole responsibility "to make the RFC determination based upon the relevant evidence presented." *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC for "light work as defined in 20 CFR 416.967(b) except the claimant must avoid exposure to hazards. The claimant is further able to understand, remember and carry out simple instructions and is able to adapt to gradual and infrequent changes in the workplace" TR 17. The ALJ explained:

28

> In making this finding, the undersigned has considered all
> symptoms and the extent to which these symptoms can reasonably
> be accepted as consistent with the objective medical evidence and
> other evidence, based on the requirements of 20 CFR 416.929 and
> SSRs 96-4p and 96-7p. The undersigned has also considered
> opinion evidence in accordance with the requirements of 20 CFR
> 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

TR 17.

As has been demonstrated, the ALJ appropriately considered, evaluated, and discussed Plaintiff's records and testimony when rendering his RFC assessment. TR 17-22. In fact, as noted above, the ALJ specifically discussed Plaintiff's fourteen impairments and noted that although they did not rise to the level of disability, they nevertheless limit Plaintiff's ability to work. TR 21-22. The ALJ ultimately determined that Plaintiff retained the RFC to perform light work with additional limitations. TR 17. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

**4. Hypothetical Questions and Reliance on the VE's Testimony Related Thereto**

Plaintiff argues that the ALJ's hypothetical questions posed to the VE did not accurately reflect her exertional and nonexertional limitations, and that therefore the ALJ erred in relying upon the VE's testimony to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform. Docket No. 21, p. 53. Specifically, Plaintiff argues that the ALJ did not include limitations opined by Ms. Mitchell, which Plaintiff contends are supported by the record and uncontradicted (except by the State medical consultants) *Id.* Plaintiff also argues that the ALJ failed to include limitations opined by Dr. Womack, and did not give any reason for failing to do so. *Id.* Additionally, Plaintiff maintains that "[t]he ALJ's

29

failure to ask determine [*sic*] whether the VE's testimony was consistent with the DOT is a violation of SSR 00-4p, and constitutes reversible error." *Id.*

Defendant does not specifically respond to Plaintiff's contention that the ALJ's hypothetical questions posed to the VE did not accurately reflect Plaintiff's exertional and nonexertional limitations. *See* Docket No. 22. Regarding Plaintiff's argument that the ALJ's failure to ask the VE whether her testimony was consistent with the DOT is reversible error, Defendant responds that "[i]n this case, the omission is harmless." *Id.* at 14. Defendant maintains that:

> First, the VE obviously relied upon the DOT giving the DOT identifying numbers for each of the 3 light, unskilled jobs the VE identified that a person with plaintiff's RFC could perform. Tr. 61. Nothing in the DOT descriptions of these jobs contradicts the VE's testimony. Second, for this omission to become harmful, plaintiff must show prejudice. Plaintiff' [*sic*] Brief makes no such showing because plaintiff cannot do so.

*Id.*

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations, or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

In the presence of nonexertional limitations that would preclude the application of the grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

At Plaintiff's hearing, the ALJ in the instant action posed several hypothetical questions to the VE. TR 59-61. The ALJ first queried:

> ALJ: So Ms. McBroom-Weiss, we've got our, our past relevant work at medium and light unskilled and semi-skilled. So I'm going to give you a hypothetical, and for each hypothetical, I want you to consider an individual who is basically, would be 40 to 42 years old, seventh grade education, so limited education. And then that, as I said, that past relevant work in the light unskilled and medium semi-skilled.
>
> All right. For the first hypothetical, I want you to consider from a physical standpoint, consider that the individual can perform exertional activities at a full range of light with no exposures to hazards. That's based on 14F. And then consider that the individual is able to understand, remember and carry out only simple instructions. Let me just open this up to – let me just read this to you. This is how it goes. From, from – cognitively, she would be able to learn simple instructions with extra assistance. Okay?
>
> VE: Okay.
>
> ALJ: All right. So she's able to understand, remember, and carry out simple instructions, but to learn them, she's going to

need a little extra assistance in the beginning. All right. Also, only gradual and infrequent change. Okay. Based on those physical and mental limitations, would she be able to perform any past relevant work?

VE: Your Honor, I had just a quick, quick question. I think it's the extra assistance is throwing me off. It would depend on if she would need a job coach which would be a special accommodation to learn the job or if she would just need a little bit of minor extra assistance. I mean, it's so unclear.

ALJ: As I read it, it appears it would be just – it's not a job coach level. It's the, it's the – just a little extra more time with the supervisor, but still able to, to learn the activities –

VE: Okay.

ALJ: – and perform them.

VE: Okay. Given that, Your Honor, the gluer position would remain, but not the housekeeper.

ALJ: Okay. All right. Because there are some questions with regard to past relevant work, let's go ahead and take testimony with regard to other jobs in the regional or national economy that may be available.

VE: Okay. Just a moment, Your Honor. Given these limitations, one example would be hotel housekeeper. That <u>DOT</u> – sorry, just one second, computer is slow – is 323.687-014. A light unskilled position. Approximately 4,700 in Tennessee, 220,000 in the U.S. Just one more second. Another example would be a hand packager at light unskilled. Approximately – oh, 559.687-074. Approximately 600 in Tennessee, 22,000 in the U.S.

ALJ: That's also light unskilled?

VE: It is, Your Honor.

ALJ: Okay.

VE: And just one additional – just one second. And another example would be a bench assembler, 706.684-022, light unskilled. Approximately 1,400 in Tennessee, 20,000 in the U.S.

TR 59-61.

The ALJ then modified the hypothetical question and queried:

ALJ: Okay. All right. For the next hypothetical, consider the same physical limitations, but from a mental standpoint, consider that the individual is going to have recurring periods that – where she's not able to maintain her focus and concentration on a sustained basis. Consider that that's due to both issues with dealing with workplace stress and problems with short and long term memory. And I think another way to describe this is to consider that she would be – it's reasonable to expect that she would have periods of being off-task for more than 20 percent of the day. Based on those limitations, would that individual be able to perform any of the past relevant work?

VE: No, Your Honor.

ALJ: How about other jobs in the regional or national economy?

VE: There would not be, Your Honor.

TR 61.

As can be seen, the ALJ posed several hypothetical questions to the VE, each incorporating different combinations of exertional and nonexertional limitations alleged by Plaintiff and/or contained within the record. TR 59-61. As has been discussed in the statements of error above, the ALJ properly evaluated the evidence, found that Plaintiff's allegations were not fully credible, and ultimately determined that Plaintiff retained the following RFC:

. . . to perform light work as defined in 20 CFR 416.967(b) except the claimant must avoid exposure to hazards. The claimant is further able to understand, remember and carry out simple instructions and is able to adapt to gradual and infrequent changes in the workplace.

TR 17.

An ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820 F.2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*,

33

587 F.2d 321, 323 (6th Cir. 1978).

In the instant action, the hypothetical question posed to the VE by the ALJ, upon which the ALJ relied to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform, accurately reflected the limitations that the ALJ found credible, consistent with, and supported by, the evidence of record. *See* TR 17-22. Because the hypothetical question upon which the ALJ ultimately rendered his decision accurately represented Plaintiff's credible limitations, the ALJ properly relied on the VE's answer to that hypothetical question to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley*, 820 F.2d at 779. Accordingly, Plaintiff's claim fails.

Regarding Plaintiff's argument that the ALJ omitted limitations from Ms. Mitchell's opinion, as discussed above, the ALJ properly accorded little weight to Ms. Mitchell's opinion. Thus, it was proper for the ALJ not to include the additional limitations included in her opinion in the hypothetical questions posed to the VE.

Turning to Plaintiff's contention that the ALJ improperly omitted, without explanation, limitations assessed by Dr. Womack, the record indicates that Dr. Womack's RFC assessment indicated eight different moderate mental impairments. TR 483-84. Under "Sustained Concentration and Persistence," Dr. Womack indicated moderate limitations in the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to

34

perform at a consistent pace without an unreasonable number and length of rest periods.  *Id.*

Under "Social Interaction," Dr. Womack indicated moderate limitations in the ability to interact

appropriately with the general public, the ability to accept instructions and respond appropriately

to criticism from supervisors, and the ability to get along with coworkers or peers without

distracting them or exhibiting behavioral extremes.  TR 484.  Under "Adaptation," Dr. Womack

indicated moderate limitations in the ability to respond appropriately to changes in the work

setting, the ability to travel in unfamiliar places or use public transportation, and the ability to set

realistic goals or make plans independently of others.  *Id.*

These findings are consistent with the findings by the ALJ and are consistent with the

opinions relied on by the ALJ.  TR 16-22.  Specifically, the ALJ determined Plaintiff to have the

following impairments in social interaction:

> In social functioning, the claimant has moderate difficulties.  The
> claimant sits on her porch daily, talks on the phone, and spends
> time with her mother and daughter.  (Exhibit 9E).  Treatment
> records indicate the claimant often traveled with her boyfriend who
> drove around to different work sites in different cities.  (Exhibit
> 20F)

TR 16, *citing* TR 201-08, 494-591.

Regarding concentration and persistence, the ALJ discussed the following: "With regard

to concentration, persistence or pace, the claimant has moderate difficulties.  The claimant has

difficulty with instructions and memory, but watches television and reads on occasion.  (Exhibit

5E and Exhibit 9E)."  TR 16, *citing* TR 178-85, 201-08.  In addition, regarding adaptation, Dr.

Edwards opined that Plaintiff maintained "moderate problems with overall adaptive skills."  TR

465.  Dr. Edwards's opinion was given "considerable weight" by the ALJ.  TR 22.

As can be seen, the moderate limitations noted by Dr. Womack in social interaction, concentration and persistence, and adaptation were properly considered, evaluated, and assessed by the ALJ.  Accordingly, Plaintiff's argument on this point fails.

Regarding Plaintiff's claim that the ALJ failed to ask the VE whether her testimony was consistent with the DOT (Docket 21, p. 53), the Social Security Regulations discuss the duty to ask this question as follows:

The Responsibility to Ask About Conflicts

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.  In these situations, the adjudicator will:

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Explaining the Resolution

When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The adjudicator will explain in the determination or decision how he or she resolved the conflict.  The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4P, 2000 WL 1898704, *4 (2000).  When an ALJ fails to ask the VE about consistency

with the DOT, courts have determined that without discernible harm to the plaintiff, the Commissioner's decision should not be remanded based purely on this technical error. *See, e.g.*, *Andrade v. Astrue*, No. 2:11CV140, 2012 WL 364735, at *14 (E.D. Tenn. March 6, 2012) (determining the ALJ's failure to ask harmless when plaintiff failed to show he was harmed by the ALJ's inadvertence in not asking the VE whether there were any inconsistencies between her testimony and the DOT).

In the case at bar, Plaintiff is correct that the ALJ failed to ask the VE whether her testimony was consistent with the DOT. *See* TR 30-65. However, Plaintiff does not demonstrate any way that she was harmed by this failure to ask. *See* Docket No. 21. In addition, while the ALJ did not ask whether the VE's testimony was consistent with the DOT, the VE explicitly referred to the applicable DOT numbers in her testimony, as cited above. TR 59-61. Accordingly, the ALJ was aware that the VE's testimony was based on evidence consistent with information provided by the DOT. As a result, there is no evidence that the VE's testimony was inconsistent with the DOT. Thus, the ALJ's failure to ask the VE this question is not grounds for reversal or remand.

Furthermore, regarding the ALJ's duty to determine whether the VE's testimony was consistent with the DOT, the Social Security Regulations state:

> Resolving Conflicts in Occupational Information
>
> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information provided by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the

adjudicator's duty to fully develop the record, the adjudicator will
inquire, on the record, as to whether or not there is such
consistency.

Neither the DOT nor the VE or VS evidence automatically
"trumps" when there is a conflict. The adjudicator must resolve
the conflict by determining if the explanation given by the VE or
VS is reasonable and provides a basis for relying on the VE or VS
testimony rather than on the DOT information.

SSR 00-4), 2000 WL at *2. The ALJ stated that the VE's testimony was consistent with

information in the DOT. TR 23. As there is no evidence that the VE's testimony was

inconsistent with the DOT, the ALJ had no duty to explain the resolution of any conflict. SSR

00-4p. In addition, Plaintiff provides no support in her brief for her contention that the ALJ

failed to determine the consistency. *See* Docket No. 21. Accordingly, Plaintiff's contention on

this point must fail.

**5. Plaintiff's Past Relevant Work and Ability to Perform Other Work**

Plaintiff argues that the ALJ erred in determining that her work as a gluer qualified as

past relevant work. Docket No. 21, p. 52. Specifically, Plaintiff argues that her work as a gluer

did not constitute substantial gainful activity ("SGA"). *Id.* Plaintiff asserts that her monthly

income did not reach the level necessary for SGA. *Id.* at 52-53. In addition, Plaintiff contends

that because her work as a gluer did not qualify as past relevant work, the ALJ's finding that she

could perform past relevant work was in error. *Id.* at 53.

Defendant responds that the ALJ "is not necessarily incorrect" in his past relevant work

determination. Docket No. 22, p. 14. Defendant contends that the presumption that $700.00 per

month constitutes SGA should not be applied mechanically in this type of situation "where the

average monthly earnings are very close to the $700.00 amount, or may well exceed this amount since the record does not reflect whether plaintiff worked a full 12 months in the year 2000." *Id.*, *citing* TR 161. In addition, Defendant contends that even if the ALJ is in error, it would not constitute reversible error because the ALJ made an alternative finding that Plaintiff could perform other jobs identified by the VE. *Id.*, *citing* TR 23-24.

The ALJ discussed Plaintiff's ability to engage in past relevant work as a gluer as follows:

> **5. The claimant is capable of performing past relevant work as a gluer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).**
>
> The vocational expert testified that the claimant's past relevant work as a gluer is identified as light, unskilled work (D.O.T. # 795.687-014) with an SVP of 2. The vocational expert testified that this work was not precluded by the claimant's residual functional capacity.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed. The undersigned specifically asked the vocational expert, pursuant to the requirements set forth in SSR 00-4p, whether the opinions expressed were consistent with the occupational information provided in the Dictionary of Occupational Titles (DOT). The vocational expert answered in the affirmative.
>
> Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform. Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process.

TR 22-23.  Although the ALJ did not directly discuss his reasons for considering Plaintiff's work

as a gluer to be SGA, the ALJ considered Plaintiff's work history records, which provide the

evidence of her monthly and yearly income, stating:

> The claimant's work history does not enhance the credibility of her
> allegations of disability.  The claimant has never worked on more
> than a sporadic basis and has never demonstrated a consistent
> motivation to work before the date of which she alleges becoming
> disabled, which raises a question as to whether the claimant's
> continuing unemployment is actually due to medical impairments
> (Exhibit 5D).  A poor work history can lessen a claimant's
> credibility.  Woolf v. Shalala, 3 F.3d 1274 (8th Cir. 1993).

TR 18, *citing* TR 149-52.  As noted above, Exhibit 5D discusses Plaintiff's earnings from

various jobs.

Regarding the impact of finding that a claimant has or has not engaged in SGA, the Code

of Federal Regulations states that: "Generally, if you worked for substantial earnings, we will

find that you are able to do substantial gainful activity.  However, the fact that your earnings

were not substantial will not necessarily show that you are not able to do substantial gainful

activity."  20 CFR § 416.974(a)(1).  The portion of the Regulations relevant to calculating

whether a claimant's income constitutes SGA states:

> (2) Earnings that will ordinarily show that you have engaged in
> substantial gainful activity.  We will consider that your earnings
> from your work activity as an employee (including earnings from
> work in a sheltered workshop or a comparable facility especially
> set up for severely impaired persons) show that you have engaged
> in substantial gainful activity if:

> > (i) Before January 1, 2001, they averaged more than the
> > amount(s) in Table 1 of this section for the time(s) in which
> > you worked.

(ii) Beginning January 1, 2001, and each year thereafter, they average more than the larger of:

(A) The amount for the previous year, or

(B) An amount adjusted for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for the year 1998.  We will then round the resulting amount to the next higher multiple of $10 where such amount is a multiple of $5 but not of $10 and to the nearest multiple of $10 in any other case.

. . .

(3) Earnings that will ordinarily show that you have not engaged in substantial gainful activity.

(i) General.  If your average monthly earnings are equal to or less than the amount(s) determined under paragraph (b)(2) of this section for the year(s) in which you work, we will generally consider that the earnings from your work as an employee (including earnings from work in a sheltered workshop or comparable facility) will show that you have not engaged in substantial gainful activity.  We will generally not consider other information in addition to your earnings except in the circumstances described in paragraph (b)(3)(ii) of this section.

20 CFR § 416.974(b).

As noted above, the Regulations establish a presumption of the amount of average monthly income that will qualify as SGA; however, the Regulations do not create a bright line rule.  *See* 20 CFR § 416.974; *Wade v. Astrue*, No. 1:11 CV 489, 2012 WL 1004728 at *3 (N.D.

Ohio March 23, 2012). The Regulations simply indicate when earnings will "ordinarily show" whether one earns enough income to constitute SGA. 20 CFR § 416.974. The relevant Regulations provide guidelines for the ALJ's determination. *Id.* The ALJ's opinion demonstrates that he considered Plaintiff's income and came to a reasoned decision regarding whether her work as a gluer qualified as SGA. TR 18, *citing* TR 149-52.

Furthermore, Table 1 of this section of the Regulations states that the average monthly earnings applicable to Plaintiff is $700.00, as she worked between January and December 2000. *See* 20 CFR § 416.974(b)(2)(ii)(B). The record indicates that Plaintiff was paid $7,516.87 for her work as a gluer in 2000, meaning that if she worked all twelve months, her average monthly income totaled about $626.41, which would not meet the $700.00 monthly presumption for SGA. TR 150. Plaintiff, however, points to no evidence that she worked all twelve months of 2000. *See* Docket No. 21. At Step 4 of the sequential evaluation, it is the plaintiff's burden to prove that his or her work did not constitute SGA and past relevant work. 20 CFR § 416.920. To meet his or her burden regarding SGA, a plaintiff should put forth evidence of how many months in the relevant time period he or she worked at the job in question. *Wade v. Astrue*, 2012 WL 1004728, at *3 (failing to find error in the ALJ's SGA determination based on earnings alone when plaintiff put forth no evidence regarding a proper denominator). In the case at bar, Plaintiff simply states that "the evidence establishes that she performed this job for the entire year," without identifying any specific evidence. Docket No. 21, p. 53. It is not clear from the evidence of record how many months of 2000 Plaintiff worked as a gluer, and thus whether she met the presumption of SGA. *See* TR 149-52.

Notably, Plaintiff failed to make an argument in support of her contention that the ALJ

erred in his finding that Plaintiff could perform past relevant work. *See* Docket No. 21. Plaintiff simply states that there was no past relevant work. *Id.* at 53. Accordingly, Plaintiff's claims that her work as a gluer did not constitute past relevant work and that she did not meet past relevant work requirements more generally must fail.

Moreover, the ALJ continued to find that Plaintiff is also able to perform other work that exists in significant numbers in the national economy. TR 23. Plaintiff contends that "the ALJ's finding that [Plaintiff] can perform other work is error." Docket No. 21, p. 53. Specifically, Plaintiff argues that because one of the ALJ's hypothetical questions incorporated limitations from Dr. Edwards's assessment, that question that "the ALJ expressly endorsed resulted in testimony from the VE that no jobs could be performed;" thus, the ALJ should have found Plaintiff to be disabled. *Id.*

Defendant does not address Plaintiff's contentions related to the ALJ's finding that Plaintiff could perform other work. *See* Docket No. 22.

Regarding the ALJ's incorporation of Dr. Edwards's assessment and the resulting VE testimony, as discussed above in the first statement of error (Weight Accorded to the Medical Opinion Evidence), the ALJ came to a reasoned decision regarding the inconsistencies between the opinions of Drs. Bruce and Sekulovski and that of Dr. Edwards. As such, the ALJ properly determined the impact of Dr. Edwards's opinion on the RFC assessment and hypothetical questions.

Regarding Plaintiff's ability to perform other jobs in the national economy besides her past relevant work, the ALJ wrote:

The claimant was born on October 22, 1969 and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963). The claimant has a limited education and is able to communicate in English (20 CFR 416.964). Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform (20 CFR 416.969 and 416.969(a)).

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking [*sic*] unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking [*sic*] (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age,

education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a hotel housekeeper (unskilled, light, DOT #323.687-014), with approximately 4,700 jobs statewide, and 220,000 jobs nationally); hand packager (unskilled, light, DOT #559.687-074, with approximately 600 jobs locally and 22,000 jobs nationally); and a bench assembler (unskilled, light, DOT #706.684-022, with approximately 1,400 jobs locally and 20,000 jobs nationally).

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

TR 23-24.

As has been discussed above, the ALJ properly evaluated and discussed the medical evidence of record, appropriately assessed the credibility of Plaintiff's statements, properly determined Plaintiff's RFC, asked appropriate questions of the VE and was justified in relying on the VE's testimony. The ALJ then properly arrived at the finding that Plaintiff is not only capable of performing her past relevant work, but is capable of performing other work as well.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge