# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SHELIA STAPLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-01031 |
| ) | Judge Aleta A. Trauger |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Shelia Staples brings this action under 42 U.S.C. § 1383(c)(3), seeking judicial review of the Social Security Commissioner's denial of her application for Supplemental Security Insurance ("SSI") under Title XVI of the Social Security Act. SSI is available to individuals who qualify as "disabled" within the meaning of 42 U.S.C. § 1382.

On January 23, 2017, the magistrate judge issued a Report and Recommendation ("R&R") (Doc. No. 25), recommending that the plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 20) be denied and that the decision of the Social Security Administration ("SSA") be affirmed. The plaintiff has filed timely Objections. (Doc. No. 32.) For the reasons discussed herein, the court will overrule the Objections, accept the R&R, and deny the plaintiff's motion.

## I. PROCEDURAL BACKGROUND

The plaintiff filed her application for SSI on June 10, 2010, with a protective filing date

---

[1] The court takes judicial notice that Nancy A. Berryhill is now Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Berryhill is automatically substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this action.

of April 18, 2010, claiming that she has been disabled since January 10, 1990. (*See* Administrative Record (AR) 142,[2] Doc. No. 12.) She later amended the onset date to April 18, 2010. (AR 154.) Her application alleges that she is disabled due to back injuries, seizure disorder, high blood pressure, depression and anxiety. (AR 189.)

The SSA denied the application initially and upon reconsideration. (AR 66–67, 68.) The plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), which was conducted on April 13, 2012. (AR 30–65.) The plaintiff and a vocational expert ("VE") appeared and testified at the hearing.

The ALJ issued a decision unfavorable to the plaintiff on May 21, 2012, finding that the plaintiff was not disabled within the meaning of the Social Security Act and Regulations. (AR 10–24.) The ALJ made the following specific findings:

> 1. The claimant has not engaged in substantial gainful activity since April 18, 2010, the alleged onset date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: lumbago; degenerative disc disease of the lumbar spine; insomnia; joint pain of the leg; hypertension; seizure disorder; headaches; reflux; cognitive disorder; major depressive disorder; bipolar; anxiety; adjustment disorder with anxiety; and depressed mood (20 CFR 416.920(c)). . . .
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). . . .
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant must avoid exposure to hazards. The claimant is further able to understand, remember and carry out simple instructions and is able to adapt to gradual and infrequent changes in the workplace. . . .
>
> 5. The claimant is capable of performing past relevant work as a gluer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965). . . .

---

[2] Page number references to the administrative record are consistent with the Bates stamp number at the lower right corner of each page.

> Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform. Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process.
>
> The claimant was born on October 22, 1969 and was 40 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963). The claimant has limited education and is able to communicate in English (20 CFR 416.964). Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).
>
> In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform (20 CFR 416.969 and 416.969(a)).
>
> 6. The claimant has not been under a disability, as defined in the Social Security Act, since April 18, 2010, the date the application was filed (20 CFR 416.920(f)).

(AR 15–24).

The Appeals Council declined review of the case (AR 1), thus rendering the ALJ's decision the "final decision" of the Commissioner.

The plaintiff filed her Complaint initiating this action on September 20, 2013. (Doc. No. 1.) The SSA filed a timely Answer (Doc. No. 11), denying liability, and a complete copy of the Administrative Record (Doc. No. 12). On May 20, 2014, the plaintiff filed her Motion for Judgment on the Administrative Record (Doc. No. 20), which the SSA opposed (Doc. No. 22). On January 23, 2017, the magistrate judge issued his R&R (Doc. No. 25), recommending that the plaintiff's motion be denied and that the SSA's decision be affirmed.

The plaintiff, after having been granted several extensions of the deadline, filed Objections to the R&R (Doc. No. 32); the SSA has filed a Response in opposition to the Objections (Doc. No. 33).

## II. STANDARD OF REVIEW

When a magistrate judge issues a report and recommendation regarding a dispositive

pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(1)(C); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Objections must be specific; a general objection to the R&R is not sufficient and may result in waiver of further review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). In conducting its review of the objections, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In Social Security cases under Title XVI, like those under Title II, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and, as such, entitled to benefits. 42 U.S.C. §§ 1383(c), 405(h). The court's review of an ALJ's decision is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal citations omitted). "The substantial evidence standard . . . presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "Therefore, if substantial evidence supports an ALJ's decision, the court defers to that finding, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

**III.   OBJECTIONS**

The plaintiff's specific objections to the R&R are as follows:

1. The magistrate judge improperly employed a "*post hoc rationale*" (Doc. No. 32, at 1) in concluding that the ALJ's decision was supported by substantial evidence.

2. The magistrate judge erred in accepting the ALJ's determination that the plaintiff had engaged in past relevant work as a "gluer" in 2000.

3. The magistrate judge erred in accepting the ALJ's adoption of only a part of psychologist Terry Edwards' opinion in making his decision regarding the plaintiff's residual functional capacity, when the ALJ had announced that he was assigning "considerable weight" and "incorporating" Edwards' opinion into the ALJ's finding regarding the plaintiff's functional capacity.

4. The ALJ erred in failing to consider whether the plaintiff's failure to obtain more medical treatment resulted from an inability to afford treatment.

5. The ALJ's decision to accord no weight to the opinion of treating nurse practitioner Vickie Mitchell is not supported by substantial evidence and is contrary to SSA rulings and regulations.

6. The ALJ's credibility finding is contrary to SSA regulations and rulings and is not supported by substantial evidence.

7. The ALJ's determination that the plaintiff can perform any past relevant work or any other work is not supported by substantial evidence.

8. The ALJ's finding that the plaintiff is not credible is not supported by substantial evidence, violates SSR 96-7p and is precisely the kind of boilerplate, conclusory opinion that ALJs are prohibited from making.

## IV. ANALYSIS

The parties have both incorporated very detailed summaries of the plaintiff's medical history into their memoranda in support of and against judgment on the administrative record, with which the court presumes familiarity.

### 1. *Administrative Post Hoc Rationalization*

A long-standing principle of administrative law requires reviewing courts to "judge the propriety of [an administrative] action solely by the grounds invoked by the agency." *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 (1947). The Sixth Circuit appears to have applied this rule in the context of the judicial review of SSA decisions. *See, e.g.*, *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009) ("Where an 'administrative agency alone is authorized to make' a particular determination, the reviewing court 'must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" (quoting *Chenery*, 332 U.S. at 196)). *Accord Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515 (6th Cir. 2014) (citing *Chenery*, 332 U.S. at 196–97, for the principle that "the basis for an agency decision 'must be set forth with such clarity as to be understandable' in order to enable judicial review").

The defendant contends that, even assuming *Chenery* applies to Social Security cases generally, the ALJ's findings of fact and conclusions of law are the "grounds" upon which the ALJ's decision rests and that, as long as the ALJ's decision is based on those findings and conclusions, which are themselves supported by substantial evidence, the ALJ's decision does not violate *Chenery*. (*See* Doc. No. 33, at 3 (noting that the law provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive" (citing 42 U.S.C. § 405(g)).)

The court finds this argument to be largely academic and will therefore consider it only insofar as it pertains to specific claims that the ALJ's decision was not supported by substantial evidence or that the magistrate judge improperly accepted a particular finding of fact by the ALJ.

### 2. The Conclusion That the Plaintiff Had Past Relevant Work

Regardless of whether the ALJ erroneously determined that the plaintiff had engaged in past relevant work as a "gluer" in 2000,[3] such error would be harmless, because the ALJ also made an alternative finding, at step five of the sequential analysis, that the plaintiff can perform other jobs available in the national and regional economy, as identified by the VE.

### 3. The ALJ's Acceptance of Dr. Edwards' Opinion

The plaintiff argues that the court "should reject the R&R's *post hoc rationale* regarding the ALJ's consideration of the opinion of the consulting psychologist, Terry Edwards, Ed.D." (Doc. No. 32, at 8.) More specifically, the plaintiff appears to be arguing that the ALJ erred by expressly assigning "considerable weight" to Dr. Edwards' opinion and "incorporat[ing]" the work-related limitations assigned by Dr. Edwards into his own findings regarding the plaintiff's residual functional capacity, but then failing to include her problems with stress, short-term and long-term memory, focus, concentration, and difficulty learning simple instructions as assessed by Dr. Edwards into the ALJ's own findings regarding the plaintiff's residual functional capacity. The plaintiff argues that, if the ALJ had actually incorporated all of Dr. Edwards'

---

[3] As the defendant points out, the plaintiff represented in conjunction with her SSI application that she had worked from January 2000 through December 2000 as a gluer, making $10.50 per hour and working ten hours a day, six days a week. (AR 190.) If she indeed worked as much as she claimed, then she was earning substantially more than $700 per month, even though she reported earnings of only $7,516.87 from that employer for 2000. (AR 148, 150.) The regulations at 20 C.F.R. § 416.974 create a presumption that earnings of more than $700 per month during the year 2000 qualify as substantial gainful activity.

findings, as he appeared to state that he was doing, he necessarily would have found that the plaintiff is incapable of performing any work available in the national economy, and, therefore, that she is disabled. The plaintiff further argues that the magistrate judge's acceptance of the ALJ's determination constituted *post hoc* rationalization in violation of *Chenery*.

Dr. Edwards examined the plaintiff on August 25, 2010. (AR 462–66, Ex. 13F.) The plaintiff reported to him that she sometimes had one to three seizures a week, sometimes none; that she had memory problems that had worsened over the past six to seven years, probably due to the seizures; and that she liked her treating psychiatrist, whom she had been seeing for twelve years for anxiety, depression and insomnia. On physical examination, Dr. Edwards found the plaintiff's gait and motor skills to be slow and found her to be logical and coherent but, "surprising[ly]," not oriented. (AR 463.) More specifically, she knew the day of the week, the month and the year, but she did not know the time or the date. Dr. Edwards described her as "consistently confused . . . throughout the interview." (AR 463.) He believed her memory and concentration problems were likely related to her seizures or other medical issues.

After noting the plaintiff's self-reported occupational functioning, activities of daily living, history, and social functioning, Dr. Edwards made the following assessment:

> [The claimant] would be able to make interpersonal decisions. I believe she would get along with bosses and coworkers. She would have a moderate to marked problem with stress only. She cannot travel independently. She continues to be able to handle medication now. She would be able to handle fund[s]. She would have moderate to marked impairment in focus and concentration. I noticed problems with short and long-term memory which are probably related to her seizures or other medical condition. She would have moderate problems with overall adaptive skills. Cognitively, she would be able to learn simple instructions with extra assistance. She would have moderate problems with social functioning.

(AR 465.) He diagnosed her as having a non-specified cognitive disorder and "major depression moderate." (AR 465.)

At step three of the sequential analysis, without specifically referencing Dr. Edwards' opinion, the ALJ concluded that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the impairments listed in 20 CFR Part 404, Subpart P. More specifically, he concluded that, whether considered singly or in combination, her mental impairments do not meet or medically equal the criteria of listings 12.04 or 12.06:

> In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. . . .
>
> In activities of daily living, the claimant has mild restriction. The claimant is able to handle her own bathing and grooming, helps take care of her elderly mother, cares for her dogs, prepare[s] simple meals, read[s], and watch[es] television. (Exhibit 9E)
>
> In social functioning, the claimant has moderate difficulties. The claimant sits on her porch daily, talks on the phone, and spends time with her mother and daughter. (Exhibit 9E) Treatment records indicate the claimant often traveled with her boyfriend who drove around to different work sites in different cities. (Exhibit 5E and Exhibit 9E)
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> Because the claimant's mental impairments do not cause at least two "marked limitations" or one "marked" limitation and "repeated" episodes of decompensation . . . , the "paragraph B" criteria are not satisfied.

(AR 16.)

At step four of his analysis, the ALJ found that the plaintiff has the residual functional capacity to perform light work but must avoid exposure to hazards and that she is able to understand, remember and carry out simple instructions and to adapt to gradual and infrequent changes in the work place. (AR 17.) In making that determination, the ALJ specifically found

that the plaintiff's statements concerning the intensity, persistence, and limiting effects of her various symptoms were "not fully credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 18.) He noted that the claimant's work history—virtually non-existent—did not enhance her credibility. (AR 18 (citing *Woolf v. Shalala*, 3 F.3d 1274 (8th Cir. 1993), for the proposition that a poor work history can lessen a claimant's credibility).) The ALJ referenced the treatment notes of Dr. Narciso C. Gaboy, the plaintiff's treating psychiatrist through 2010, and found that the plaintiff's missed appointments, non-compliance with medication protocol, and failure to find a therapist, despite Dr. Gaboy's repeated recommendations, "indicate that her mental health problems may not be as severe as alleged." (AR 19.) He stated:

> It is reasonable to conclude that the claimant's ability to function would improve if she sought consistent formal mental health treatment and followed her physician's plan of care more diligently. Nevertheless, the claimant's ability to travel cross-country with her boyfriend indicates a high level of function that is inconsistent with her complaints of disabling anxiety, seizures, and major depressive disorder. The claimant was able to enjoy these trips, and later relate her adventures to Dr. Gaboy in an enjoyable fashion . . . .

(AR 19.)

After summarizing the assessments of all the other treating and consulting medical sources, including that of the plaintiff's primary care provider, nurse practitioner Vicki Mitchell, and Dr. Edwards, among others, he finally concluded as follows:

> The undersigned has evaluated the medical evidence along with the claimant's testimony, and finds that although the claimant suffers from numerous conditions that cause some limitations in her ability to perform work related activities, the evidence does not support that any of the claimant's impairments are untreatable, or that the claimant has made a consistent effort to treat her impairments in hopes of finding employment. The claimant has documented drug seeking behavior that[,] along with her poor earning records, indicate the claimant has other motivations in life that do not include being gainfully employed. Additionally, the claimant's history of traveling across the country with her boyfriend is [inconsistent] with the inability to sit for more than an hour at a time due to

> disabling pain, and [inconsistent] with disabling anxiety and depression.
>
> While the claimant's medical records do not reveal that her severe impairments are disabling, these conditions do impose some limitations. . . . Specifically, the evidence reveals that the claimant can lift and carry up to 20 pounds occasionally and must avoid all hazards. The claimant is further limited to jobs that only require simple instructions, and require initial extra help to learn the job, with only gradual and infrequent changes in the workplace. . . .[FN1]
>
>> FN 1: The consultative examiner's opinions (Exhibit 13F) of the claimant having between a "moderate to marked" problem with stress only and between a "moderate to marked" impairment in focus and concentration are interpreted at Step 3 of the sequential evaluation as "less than a marked" impairment. Therefore, an impairment that is between a "moderate" impairment and a "marked" impairment does not establish a "marked" impairment. At Step 5 of the sequential evaluation, this opinion of between "moderate to marked" limitations is interpreted as the claimant being able to perform only simple, unskilled tasks and instructions. This very restricted functional level takes into account the claimant's limitations with stress and with focus and concentration.
>
> . . . . The above stated opinions of consultative examiner . . . Dr. Terry Edwards have been given considerable weight and incorporated into the residual functional capacity, along with the mental health treatment notes of the claimant's treating psychiatrist Dr. Narciso Gaboy.

(AR 21–22 & n.1.)

The plaintiff insists, in particular, that the ALJ's footnoted explanation is insufficient to reconcile the discrepancy between his giving "considerable" weight to Dr. Edwards' assessment and his failure to find the plaintiff disabled. The plaintiff points out that the VE testified at the hearing, upon questioning from plaintiff's counsel, that if the plaintiff's ability to focus and concentrate was "sometimes moderately impaired, but also sometimes markedly impaired," that the jobs she had identified as within the abilities of a person with the impairments identified in the ALJ's first hypothetical would no longer be available. (*See* AR 63 ("[L]et me say this: if it [impairment of ability to concentrate] rose to the level of marked on a regular basis . . . [t]hen it would eliminate jobs.").) The plaintiff then argues that, despite the "considerable (indeed full)

weight he explicitly assigned to Dr. Edwards' [residual function capacity] opinion, as expressed by his 'incorporation' of said opinion into [the plaintiff's] [residual functional capacity], the ALJ inexplicably did <u>not</u> include [the plaintiff's] problems with stress, short-term memory, long-term memory, focus, concentration and difficulty learning simple instructions as assessed by Dr. Edwards into his own [residual functional capacity] finding." (Doc. No. 32, at 11.)

In response to this argument, the defendant points out that, in formulating a claimant's residual functional capacity, an ALJ is not required to adopt any particular medical opinion in its entirety but, instead, may "pick and choose from parts of an acceptable medical source opinion if the ALJ so wishes." (Doc. No. 22, at 16.) The court agrees. The ALJ also gave "significant weight" to the opinion of Dr. Bill Sekulovski (AR 20), who examined the plaintiff in January 2011 and found that she was alert and oriented as to time, place, and person, with normal immediate recall and no significant problems with short-term or long-term memory. (AR 596.) The ALJ obviously adopted and incorporated that part of Dr. Edwards' opinion that was consistent with his first hypothetical to the VE into his ultimate residual functional capacity determination. Based on his own assessment of the plaintiff and other evidence in the record, the ALJ apparently did not believe that the plaintiff's difficulties with memory and concentration were marked to the degree indicated in the second hypothetical posed to the VE. (*See* AR 30; *see also* AR 16, 18 ("With regard to concentration, persistence or pace, the claimant has moderate difficulties. . . . After careful consideration of the evidence, the undersigned finds that . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment.").)

The ALJ's decision in that regard is supported by substantial evidence in the record,

including most notably Dr. Gaboy's treatment notes, the plaintiff's behavior, and Dr. Sekulovski's assessment. Moreover, the magistrate judge's acceptance of the ALJ's opinion did not involve any "post hoc rationalization" in violation of *Chenery*. The ALJ reasonably construed Dr. Edwards' assessment of "moderate to marked" difficulties in dealing with stress and in maintaining focus and concentration as falling in the range of "less than a marked impairment" (AR 22 n.1), and incorporated, in part, Dr. Edwards' conclusions into his own findings, at step three, of moderate difficulties in social functioning and concentration, persistence and pace.

The court also rejects the plaintiff's contention that Dr. Edwards was the "**only** 'acceptable medical source' (see 20 CFR § 404.1513) who actually examined and assessed [the plaintiff's] work-related mental abilities and limitations." (Doc. No. 32, at 17.) This assertion is apparently based on the plaintiff's contention that Dr. Sekulovski was "not tasked with assessing [the plaintiff's] work-related abilities and limitations." (Doc. No. 32, at 20.) While that is true, Dr. Sekulovski is a neurologist who apparently did assess the plaintiff's mental state and abilities and found her to be substantially less limited on the date of his examination than did Dr. Edwards, who also saw the plaintiff only once and whose assessment was also largely based on the plaintiff's subjective account of her condition. In addition, while the plaintiff is correct that Dr. Sekulovski did not actually include the words "concentration, persistence and pace" in his notes, he found the plaintiff to be "alert and oriented x 3. Immediate recall is 3 out of 3. Short-term recall is 3 out of 3. The patient is able to repeat, name and follow complex commands." (AR 596.) He also found that she "respond[ed] normally to assessment of judgment, insight, recent/remote memory" and exhibited "[n]o anxiety/agitation/depressed affect.") (AR 596.)

In sum, the court finds that the ALJ appropriately exercised his discretion in according

"considerable," but not "controlling," weight to Dr. Edwards' assessment and that the ALJ's ultimate findings regarding the plaintiff's residual functional capacity, and in particular the limitations caused by her mental impairments, are supported by substantial evidence in the record. The court finds no merit in this objection.

### 4. The ALJ's Consideration of the Plaintiff's Failure to Obtain Counseling

The plaintiff asserts that the ALJ improperly rejected the plaintiff's subjective complaints based on her failure to receive additional treatment, without first considering whether that failure was the result of an inability to afford treatment. (Doc. No. 32, at 23 (citing *Stennett v. Commissioner*, 476 F. Supp. 2d 665, 672 (E.D. Mich. 2003)).) She asserts that the R&R's rejection of this argument, also raised in the plaintiff's Motion for Judgment on the Administrative Record (*see* Doc. No. 21, at 56), amounted to *post hoc* rationalization. The magistrate judge rejected this argument based on his finding that the ALJ was "aware" of the plaintiff's financial situation (Doc. No. 32, at 23–24), even though the ALJ did not expressly tie such awareness to his consideration of the plaintiff's failure to obtain additional treatment.

> The case upon which the plaintiff relies indicates that an ALJ:
>
> must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. . . . [T]he individual may be unable to afford treatment and may not have access to free or low-cost medical services.

*Stennett v. Comm'r of Soc. Sec.*, 476 F. Supp. 2d 665, 673 (E.D. Mich. 2007) (quoting SSR 096-7p, at 7–8). The court concluded in that particular case that the ALJ had "failed to consider the record as a whole in ascribing Plaintiff's failure to attend physical therapy to an improvement in his condition." *Id.*

In the present case, the ALJ did not expressly consider whether the plaintiff's financial

situation prevented her from obtaining individual mental health therapy. On the other hand, unlike in *Stennett*, the ALJ clearly *did* consider the record as a whole. Moreover, the ALJ's decision to partially discredit the plaintiff's subjective complaints was not based entirely on the plaintiff's failure to seek additional treatment from a mental health therapist. It was based on numerous other factors as well, including that: (1) the plaintiff's medically determinable impairments could reasonably be expected to cause some, but not all of her alleged physical symptoms (AR 18); (2) the plaintiff had a "never worked on more than a sporadic basis and has never demonstrated a consistent motivation to work," even before the alleged date of disability onset, which "raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments" (AR 18); (3) the plaintiff's self-reported activities of daily living were inconsistent with her allegations of significant functional limitations (AR 18); and (4) the plaintiff's "subjective complaints to her physicians," particularly Dr. Gaboy, "the objective findings documented in her medical records, and the treatment she has required do not support a finding that her severe impairments prevent her from performing all work" (AR 18).

In particular, the ALJ noted that the plaintiff reported traveling with her boyfriend in 2008 and 2009, which caused her to miss many appointments with Dr. Gaboy and to be non-compliant with his requirement that she personally pick up her own medication. As the ALJ stated:

> The claimant failed to follow Dr. Gaboy's treatment recommendations, specifically in her non-compliance with medication and missed appointments, along with her failure to find a therapist, despite Dr. Gaboy's repeated recommendations. Additionally the claimant stopped treatment with Dr. Gaboy in December 2010.
>
> The claimant's non-compliance, along with her discontinuation of treatment, indicate that her mental health problems may not be as severe as alleged. It is reasonable to conclude that the claimant's ability to function would improve if she sought consistent formal mental health treatment and followed her physician's

> plan of care more diligently. Nevertheless, the claimant's ability to travel cross-country with her boyfriend indicates a high level of function that is inconsistent with her complaints of disabling anxiety, seizures, and major depressive disorder. The claimant was able to enjoy these trips, and later relate her adventures to Dr. Gaboy in an enjoyable fashion, actions inconsistent with someone suffering disabling depression and anxiety, with disabling fear of having a seizure.

(AR 19.) In other words, the plaintiff's failure to follow Dr. Gaboy's recommendation that she seek mental health counseling was just one among many factors that called her credibility into question.

In addition, nothing in the record here, unlike in *Stennett*, would have supported a conclusion that the plaintiff's failure to comply with Dr. Gaboy's recommendations was related to her financial situation. The plaintiff did not offer testimony to that effect. She never told Dr. Gaboy or any other medical provider that the reason she had not sought individual therapy was that she could not afford it. She was covered by TennCare, and the record reflects that she had previously obtained mental health counseling at Centerstone, which suggests that free or low-cost counseling was available to her.

In sum, the ALJ did not err in failing specifically to consider the plaintiff's financial situation when he found that the plaintiff's lack of treatment detracted from her credibility. And even if the ALJ erred, the error was harmless in light of the other substantial evidence in the record that supported his findings.

### 5. The Weight Accorded Nurse Practitioner Vicki Mitchell's Opinion

The plaintiff objects that the magistrate judge erred in rejecting her argument that the ALJ's decision to accord no weight to the opinion of treating nurse practitioner Vickie Mitchell was supported by substantial evidence and was not contrary to SSA rulings and regulations.

The plaintiff insists that she demonstrated in her Memorandum in Support of Judgment on the Administrative Record that Mitchell's opinion regarding the plaintiff's functional capacity

is consistent with her treatment notes and the treatment notes from other providers. However, the sum total of the plaintiff's argument in her underlying Memorandum is as follows:

> The ALJ cannot and does not cite to a single assessment from an "acceptable source" or otherwise regarding [the plaintiff's] work-related functional abilities and limitations. So instead of relying on the assessments that are in the file (most notably, those of FNP Mitchell and Dr. Edwards) the ALJ resorted to repeating the same spurious "reasons" for finding [the plaintiff] not to be credible. . . .

(Doc. No. 21, at 56–57.) In rejecting this argument, the magistrate judge found that the ALJ's findings were supported by substantial evidence in the record.

The regulation in effect at the time the ALJ issued his opinion specifically defined "acceptable medical sources" qualified to provide medical evidence to include licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists. 20 C.F.R. § 404.1513(a) (2012).[4] The regulation further provided that an ALJ "may" properly consider "evidence from other sources"— including evidence from nurse practitioners—"to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work." 20 C.F.R. § 1513(d) (2012). Under this regulation, the ALJ was not required to accord any particular weight to the opinion of a nurse practitioner.

Nonetheless, the ALJ clearly considered Mitchell's opinion. He summarized in great detail Mitchell's Assessment of the Individual's Work-Related Abilities and Limitations (AR 723–27) and Medical Source Statement of Ability to Do Work-Related Mental Activities (AR 728–29). Mitchell assessed the plaintiff as being extremely limited in her ability to do work-related activities, whether mental or physical. The ALJ considered Mitchell's opinion in light of her treatment notes documenting the plaintiff's actual condition and noted that, despite the "disabling impairments" found by Mitchell, the nurse practitioner had never referred the plaintiff

---

[4] The regulations pertaining to acceptable medical sources were substantially amended effective March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).

to an orthopedic specialist or recommended individual counseling for her depression and anxiety. In addition, although Mitchell stated that the plaintiff's hypertension is uncontrolled, other evidence in the record suggested it is well controlled. (AR 21.)

The ALJ further found that Mitchell's opinions were inconsistent with other "objective medical evidence" indicating that the plaintiff's impairments only moderately limit her activities and that medication relieves most of her pain. (AR 21.) Consequently, the ALJ surmised that Mitchell's opinions were "based primarily on the claimant's representations concerning her symptoms." Because the ALJ also found that the plaintiff's previous drug-seeking behavior and failure to seek mental health counseling detracted from her credibility, he also found that it detracted from the reliability of Mitchell's opinion. (AR 21.)

The court finds that the ALJ did not abuse his discretion in according little weight to Mitchell's opinion, and his ultimate findings regarding the plaintiff's residual functional capacity are supported by substantial evidence.

### 6. The Plaintiff's Other Objections

The plaintiff's other objections—that the ALJ's credibility finding is contrary to SSA regulations and rulings and is not supported by substantial evidence, that the ALJ's determination that the plaintiff can perform past relevant work or any other work is not supported by substantial evidence, and that the ALJ's finding that the plaintiff is not credible is not supported by substantial evidence—all generally amount to a contention that the ALJ's findings are not supported by substantial evidence. The court has reviewed the record as a whole and considered *de novo* the plaintiff's arguments in support of her Motion for Judgment on the Administrative Record and finds that the ALJ's findings are supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the court will overrule plaintiff's Objections (Doc. No. 32); accept the magistrate judge's R&R (Doc. No. 25) with the modifications noted herein; deny the plaintiff's Motion for Judgment on the Pleadings and Administrative Record (Doc. No. 20); and affirm the SSA's decision. An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge